Good morning, Counsel. Good morning, Your Honors. My name is Carl Gunn. I'm representing Mr. Sotelo. I'm going to try to save three minutes for rebuttal, and I'll try to keep track of my time. All right. Thank you, Counsel. Your Honors, in this case, there were, first, two clear evidentiary errors and impermissible vouching during trial. Second error in finding Mr. Sotelo was not eligible for voluntary departure. And third, infringement on one of the most fundamental rights we have in our criminal justice system, the right to a jury trial. I'll start with the last of those unless the Court wants to direct me somewhere else. The first thing to understand on that issue is that what courts have described as the, quote, tough legal standard, unquote, which has to be met before a juror can be dismissed. One court has characterized that as equivalent to the beyond a reasonable doubt standard that we apply during trial. Put colloquially, if I can, you don't mess with a jury once they start deliberating unless you're really sure there's some sort of misconduct going on. Well, who has to be sure and where? The District Court was sure. This is a plain error review, right? No, it's not a plain error review, Your Honor. I think there was a sufficient objection. I think several times District Court counsel made clear that she did not think the juror should be dismissed. Okay, so the District Court has the colloquy with the juror. Isn't the District Court in the best position to determine whether the juror is expressing an unwillingness to follow the law? Yes, but the District Court has to apply that standard where it sort of errs very much on the side of keeping the juror on the case. And I think the problem here, Your Honor, was that the District Court didn't apply the right standard. The question wasn't whether the juror didn't want to be on the jury, whether the juror didn't like the law. No, but it's whether she's going to do it. Right. And you're talking to a couple former trial court judges, and you know how hard this is. Much of it has to do with almost a credibility determination. Do we really think she's going to be able to do it or not? And it's the trial court judge who can. There's this texture that doesn't come through very well. I understand that, Your Honor, but the problem is he didn't ever find that she wouldn't follow the law if he ordered her to do it. All he found was she didn't want to do it. He said she couldn't. At the very end, she said she couldn't follow the law. Right, but before that, she said she had concerns. She went back and forth. And the problem is that was what she talked about only when the judge brought it up. The first thing she said, and this goes to the standard of impetus for the juror's views on the case, the first thing she said were, quote, if I couldn't reach a decision or if my decision differed, unquote. Quote, do we write? It's not unanimous, unquote. And quote, what if I disagree with them, question mark, unquote. Those fit right into the impetus of the juror's view. But the judge went ahead to question her to see what was the crux of her difficulty. And that's what trial judges do. They have to bear down to see is it really because of her views or is it really because of her disagreement with the law and can she apply the law. So if the judge hadn't gone any further, perhaps she would have a stronger argument, but the judge did go further. Well, except the judge never asked her, is that what you disagree with the other jurors about? Because he couldn't. That's the problem when you're talking about jury deliberations is you can't get into, well, just what are you disagreeing about, et cetera, et cetera. And remember, this juror said two other really important things. She said she was really concerned about breaking the law, in quotes, and she said she knew she had to follow the law. So that's layered on top of these decisions. Well, being concerned about breaking the law could be interpreted as she didn't want to follow the law. So that could cut both ways. And the thing about it is we really are on an abuse of discretion standard. Bottom line, when we are looking at whether or not a judge properly dismissed a juror, we're on the abuse of discretion standard of review. It is an abuse of discretion. So if it could go either way, then the judge has not abused his discretion, correct? But it's abuse of discretion standard layered on top of that tough legal standard is the problem. And if there's sort of any hint or any possibility or any reasonable doubt, then maybe it had to do with a juror's disagreement with other jurors about the evidence. That's what we've got to do here. Counsel, this is a really tough argument for you, and I'm wondering if you want to move on to your other arguments. I will do that, Your Honor, because it's Your Honor's use, not mine, to control. Well, it's your time to use this. I know. I understand. But I think you have other arguments. I think that's correct, Your Honor. Let me move on to the motion to dismiss, the denial of the motion to dismiss. There's three issues there. First, did Mr. Sotelo's joyriding conviction make him ineligible for voluntary departure? Second, did the immigration judge consider voluntary departure and deny it in any event? And third, is he barred from raising the claim because he didn't appeal the removal order? On the eligibility for voluntary departure, there's multiple hurdles the government has to get over. Can you start maybe with the last of those? Did he exhaust this claim? I think there, Your Honor, the point I'm making and what I'm requesting is that I'm not asking for you to outright reverse and find he did. What I'm saying is it should be remanded to the district court for the district court to decide that in the first instance.  Why would we do that when there's a transcript that says he didn't want to appeal? Well, because there's issues that come up about whether it was voluntary when he first said he didn't want to appeal twice. Yes. And then the judge told him what he would need to do, and he said forget it. Right. He backed down when he said, oh, you've got to fill out this paper with the yellow highlighting in it. You won't get it anyway. And you can't leave right away. You can leave right away. Right. So I think those things combined with the fact that he waffled back and forth means there's some factual issues there that you should get the district court to decide in the first instance. Even if they weren't exhausted? You can't get past the exhaustion issue. If the appeal waiver wasn't voluntary, yes, that would take it past. So what I'm saying is you remand for the district court to have a hearing on whether that appeal waiver was voluntary. There's enough doubt in this record. I didn't mean to interrupt you. I'm sorry. No, you interrupt me if you want, Your Honor. Well, I didn't mean to. But what you're telling us is you think there's the transcript that I referred to you think is maybe doubtful about whether he voluntarily waived his right to continue to exhaust his administrative appeals. Correct. If we disagree with you on that point, this is the third of your 1326D, you know, 1, 2, 3, 4. But if we disagree with you on that part, we're done, right? That's the end. If you don't want the input or think you need the input from the district court having a hearing on it, then yes. Because the Supreme Court has indicated, right, you have to satisfy all of the prongs. I just want to make sure that we're tracking the same decision tree. Correct. There does have to be exhaustion of administrative remedies. What I'm saying is because the district court didn't decide that and because there's this back and forth in the record, you should remand to the district court for hearing on that in the first instance. What would that look like? Well, it would go back to the district court. There'd be argument about whether it was intelligent and voluntary. There might be additional. Well, we can have that argument here. So what additional facts do you think you could establish? Well, there might be some testimony from Mr. Sotelo. There might be, you know, further argument. After the fact, now that he knows what the repercussions are, certainly his testimony would change. But we're looking at the record as it was when it actually happened. Well, the district judge will be there looking at his demeanor and so on to evaluate it. There might be other evidence as well. I don't think I can speculate about everything that might be presented. You'd have the district court's thoughts and reasoning the same way you have his thoughts and reasoning on the juror issue. Isn't this an issue of law, though, whether or not there was exhaustion? No, I don't think so, Your Honor. I think the question of whether or not he met the legal standard for exhaustion. But the underlying issue of whether his waiver of appeal was intelligent and voluntary is certainly a mixed question at least. There are certainly factual elements to that. But the statute puts the burden on Mr. Sotelo. You've suggested that we should reverse the burden of proof here. But the statute requires Mr. Sotelo to establish to demonstrate that he's exhausted. On the other hand, there's case law that I cited in the opening brief that says the government has to prove by clear and convincing evidence that the waiver of appeal was intelligent and voluntary. What case says that? I believe I cited it on page 28 of my brief, Your Honor. Let me check. But that's a general waiver of appeal citation, I think, as opposed to showing that for purposes of 1326. I think it's in the context of immigration 1326 cases, I believe. It's United States v. Gomez. Is it pre-Palomar? I'm sorry? Is it pre- or post-Palomar? It's pre-Palomar, but I don't think Palomar really goes to the issue. Palomar goes to the issue. We know. I don't think it goes to the waiver of appeal aspect of exhaustion. Well, it goes to the – well, I think it begs the question about who's got the burden and does that cover all of the prongs of the test, and it clearly covers all the prongs of the test. I – well, I guess I'm not sure that – I think it only – A different point about burden. Yes. I think that it only addresses the not being informed is enough to make exhaustion. Counsel, what case were you citing to? You said on page 26 of your brief? Page 28, Your Honor. Page 28? United States v. Gomez, quoting United States v. Reyes-Bonilla. All right. Thank you. What's your strongest argument? Well, Your Honor, I think all my arguments are strong, but let me move on to a couple of the evidentiary. I think both the evidentiary arguments there was clearly – the rulings were clearly wrong. On the foreign birth certificate, it certainly is not the family records exception because it's not a family record. Why isn't that error harmless, though, given the other evidence? Well, Your Honor, this is what defense lawyers call a triable case. It's a lot more triable than most illegal reentry cases. First of all, on the question of citizenship, you don't have a person who is brought here when he's a teenager and can remember living in Mexico. You have someone who is brought here before any of his life that he can remember. We appreciate that, the equities of the case. We do appreciate the equities of the case. But Judge Johnstone is asking a different question, and it's the same one I've got. Even if we agree with you on your hearsay argument about the birth certificate, why isn't that harmless error given the other evidence in the record regarding your client's citizenship? Well, because the other evidence in the record – well, first of all, it's both the other evidence in the record of his citizenship and the evidence that was there to raise doubts. The other evidence of his citizenship is his admissions. But those admissions, one of them he says, I'm a U.S. citizen. The other one he's asked, he says, I don't know, Mexico. But when he says he's a U.S. citizen, then, of course, that's the basis of a separate evidentiary, sort of a cul-de-sac off in the corner where the judge allows him to be impeached on that point. But as to this birth certificate, what about your client's admission? Why isn't that enough? And I'm not talking about his testimony, I'm a U.S. citizen. I'm talking about his statement in the immigration forms, the immigration interviews. But he – I mean, the reason is there's these five different documents that they offer that purport to say he was born in Mexico or that he's a Mexican citizen. But in two of those, there's these conflicting statements. So that's something where a lawyer can argue reasonable doubt. There's also the fact that he's not someone who would remember because he's brought here when he's three months old. On top of that, there was evidence in the record about this concept of derivative citizenship and the fact that sometimes people don't know they're derivative citizens. So that doubt or question mark was out there. The point is there was stuff for the defense attorney to argue on that. And, counsel, once again, we're on abuse of discretion for an evidentiary ruling, correct? No, here I'm responding to Judge Johnstone's harmless error. I'm talking about the birth certificate, admission of the birth certificate. Isn't that an abuse of discretion standard of review as well? I don't think it is here because here it's an error of law, Your Honor. What's the error of law? That a government record can come in under the family records exception. That's clearly wrong under the text of the rule. The rule says it has to be a family record. So that's really an error of law in interpreting the rule of evidence. I think the same problem exists with the government's argument about public records exception, which isn't what the district court relied on. But we can affirm it if it's legally correct. I agree, but that's not abuse of discretion for two reasons. First of all, the district court didn't use that as discretion for that exception. And second of all, you have to have a showing that each level of hearsay, including the original reporter, is under a duty imposed by law. There's no evidence of that here. So, frankly, under any standard of review, that isn't satisfied. The hearsay objection isn't satisfied. There's also the prior convictions coming in, which I think are very prejudicial in today's climate, where you talk about, people talk about, I see I'm running low on time. Yeah, you are. Illegal aliens committing crimes. I'll save the rest of my time for rebuttal and submit that when I'm done. Well, go ahead and finish. Mitch, we'll give you a minute or two to finish up. You know, on the prior convictions, you have these very strong standards about presumption against admissibility, specific facts and circumstances, only in exceptional circumstances do they come in. The probative value has to substantially outweigh prejudice. There's nothing exceptional about these prior joyriding convictions on credibility. This wasn't the case where we had a swearing contest where Mr. Sotelo was saying this happened and a government witness is saying that happened and someone had to be lying. There's no way that this satisfies the strong presumption against admissibility on Rule 609B convictions. Unless the Court has questions, I'll submit and save the rest of my time for rebuttal. All right, thank you, Counselor. We'll give you a minute for rebuttal. Thank you, Your Honor. All right. Good morning. May it please the Court. Hava morale on behalf of the United States. I want to begin where Mr. Gunn began, which is the dismissal of Juror No. 5. First, the standard of review here is plain error. Ms. Bednarski did not object at the time that the juror was actually excused, nor did she seek to ask any further follow-up questions, even though the Court had explicitly solicited follow-up questions. I also want to address an omission that Counsel continues to make with respect to the Court's record and why it dismissed this juror. And specifically, I would direct the Court's attention to 1 ER 19-20. This is where the Court says, I think she disagrees with the law or she has some heartburn about it and she doesn't want to make a decision as a result. But Counsel omits this next sentence, which is critical. And the sentence is, and I think that goes against this instruction, specifically whether you agree with the law or not. That is the Court's express finding that Juror No. 5 is not able to follow the law as instructed, and therefore there was just pause to dismiss that juror. Finally, I think with respect to what Judge Christin said, there actually is a lot of texture that comes along in this district court transcript. And here we see a district court really mindful of its obligation to keep the juror on if the problem was that the juror had a difference of opinion on the evidence. And I think you see that no less than five times in this district court transcript, where the Court says, it's okay not to be unanimous, and I'm not going to dismiss you if it's because of your difference of opinion. Those sites are all throughout 1ER11 through 1ER13, and there are five instances in which the Court says that. Unless the Court has further questions, I'll move on to the motion to dismiss under 13-2016. To answer Judge Johnstone's question, yes, I believe if we decide that he has waived his appellate rights, that ends the inquiry in this court. Because he didn't exhaust his administrative revenues. Correct. He did not exhaust his administrative revenues. No remand is necessary. There's nothing further that needs to happen to supplement the record other than what's in the transcript before the immigration judge. I'll also note the impracticality of remand in this case, given that this defendant has finished serving his sentence, and he has presumably been deported and is not permitted to be back in the United States. But aside from that, the record shows that this defendant voluntarily waived his right to an appeal. He was told about his right to appeal. He was given specific instructions. He indicated that he had read those specific instructions, that he understood his rights. He showed he understood his rights by first asking to exercise his right to appeal, and then when he asked the Court a question, and the Court gave an accurate response about his eligibility for relief, that's when the defendant decided to withdraw his appeal. What do you say to Mr. Gunn's citation of Gomez with respect to who has the burden of establishing knowing and voluntary at this stage? We agree with Judge Christin that it is his, under Palomar-Santiago, it is the defendant's burden to show that he exhausted administrative remedies. Okay. So once we get to the next layer about whether or not it's voluntary, so he's saying he adequately exhausted because he didn't voluntarily waive. So who has the burden at that point? We maintain that it's the defendant's burden to show that he exhausted administrative remedy. If there is an issue of voluntariness, and there is not an issue here at all, then we would show that it was voluntary. So do you agree that it would be the government's burden at that point? Yes. Okay. Okay. Unless the court has further questions about the motion to dismiss, I'll move on to the next issue raised by defense counsel, which was the admissibility of the birth certificate. I want to address first the standard of review again. It's a plain error standard of review here. This is very clear on the record that defendant only objected to the authentication element of the birth certificate. He did not raise the hearsay objection. And the case cited is Gomez-Norena, which is saying that you failed to preserve an evidentiary issue by making the wrong specific objection, which is exactly what happened here. Any references to hearsay were all in connection with the defense counsel's concern about authentication. And I think under this court's precedent in Pintado y Soria and Duarte, this birth certificate is plainly admissible and was correctly admitted. It had the certification that said that it was a matter observed under a duty of law, and there is no question. But what was the matter observed? Not the birth. There are no witnesses on it. Well, the keeping of the record is something. Yeah, then we're back to that may be an exception to hearsay for purposes of establishing the document's chain of custody, but we're trying to establish an event that is at least three steps removed from what is certified, are we not? Yeah, I would direct the court's attention to Duarte in this case, and I recognize it's unpublished, but Duarte looked at the birth certificate as well as a Form I-181 and said, this Form I-181 has all these different levels of hearsay, but did not raise that same issue with respect to the birth certificate. And Pintado y Soria tells us that so long as that certification exists, so long as we can be assured that the state of Guerrero in Mexico has a system and laws that govern its acceptance of birth records and its distribution of birth records, then we can be assured. There was that proof of law established or taken as judicial notice for us to rely upon in terms of exactly what Guerrero does. That certification, that's actually that we screenshotted into our brief. That's where the authority to maintain those records came. And I think as a matter of just taking a step back, if we go into the practical consequences. Was that introduced in the district court? Yes, it was on the actual birth certificate itself. So it was on the exhibit. I didn't mean to interrupt you. Were you finished? It's a little bit slippery, and I can understand why the government or why the district court sort of folded this into business records because we're talking about a foreign document. And in a criminal case, we don't have to worry about the administrative regs that go specifically to this question. But it seems like what you're arguing is that this document is, and this is why it kind of begs the authentication question, that this document is what Mexico, or one part of Mexico, accepts as proof of birth. Yes. Right? And that's the certification. This is what they say they accept as proof of birth. And I don't know how that differs from any birth certificate that we would see admitted in this country. I'm sorry, I think I'm missing Your Honor's question. That's because I haven't asked one. I'm trying to figure out whether you're making authentication argument. Well, I think they're conflating authentication and the hearsay objection. And authentication with I think what opposing counsel is talking about is just hearsay and whether or not this is really a business record, that it's a regularly conducted activity. This hospital or this prefecture memorializes birth certificates sort of in this way. And I can't figure out which one you're responding to. Well, I heard Your Honor say business record, and I just want to ensure that the court knows that we're proceeding under the public record. Forgive me. But who is under a duty to report the birth then? I mean, American birth certificates often have a doctor. There are witnesses who are under a duty to report the birth, and that's not true of this document. Your Honor, yes, we do cite the Northern District of California case that does include the secondary source. And granted, that has no authoritative weight in this court. But the reason that fact is not developed is because this was not raised before. But what is your argument about why this is admissible? Forget plein air for a minute, because I just want to make sure that I'm tracking your argument about why this was admissible. Well, Your Honor, I think that if we take a broader step, the fact that the question under 803.18 is whether it's a matter observed pursuant to duty imposed by law. And presumably, the civil registry is governed by laws and regulations that say we can only accept certain notifications or not. And that, you say presumably, I think that's Judge Johnstone's point. So if this were a birth certificate, you know, a domestic birth certificate, it would still say Providence Hospital, and I wouldn't know if the person who signed that was a nun or the lady at the, you know, the person in the records division of the hospital or who it was. But I would know that it's coming to me from the Bureau of Vital Statistics and the Bureau of Vital Statistics in Alaska accepts that birth certificate as proof that this birth happened at that hospital on that date. And I think the fact that the Bureau of Vital Statistics accepts that and that suggests that it is authentic and that it is a birth certificate and that it is what it claims to be, and therefore that that person who reported it, the exchange of the person reports it, but there also has to be a system that accepts it. And the fact that the system that accepts it did accept it. Exactly, and so that's what I was trying to get you to sort of circle back. I mean, in that way, I don't think this document is any different than a domestic birth certificate. It's got the certification that you mentioned that indicates that in Mexico this is sufficient. That's correct, Your Honor. Doesn't Pintado make that very point that the record of birth which was issued by the government of Nayarit, Mexico, is self-authenticating? Doesn't that make that very point? That's why I lied with Pintado, Sordia, and Duarte, I think, govern this case, but regardless... But Duarte is unpublished, so it can't govern. Correct, but I think its reasoning is relevant to this case. But you are asking, and I think this is all along the road, to circle back to Judge Johnstone's question. You are asking us to assume that in Mexico it's done the same way and that the certification that we're looking at fills the same gap in this hearsay chain as the one that we would have in a domestic birth certificate. That's correct, Your Honor, but I think as a matter of practicality, I mean, there are birth certificates from any number of countries, and each country might have its own requirements for what is or is not included in that birth certificate, and its admissibility should not turn on whether that specific birth certificate requires that the doctor or nurse who delivered it actually puts their name down. But that's a policy point. If we just take a step back, we look at harmlessness in this case, really, because the defendant admitted five times that he was a Mexican citizen, and three of those times were under oath, and there was no birth certificate from the United States as Deportation Officer Singer testified to. So there is proof beyond a reasonable doubt here in this case that the defendant was not a citizen of the United States. What is your answer? There's a reason we went to harmlessness first. What is your answer to opposing counsel's argument that there are indications in some of the places in the record that he perhaps was born in this country? It's not an unmixed record. Sure, I think that those indications, for example, in an interview he initially made a claim of United States citizenship, but he later retracted that claim. And I think he did mention in trial, he said, at some point, I am a U.S. citizen. That testimony was actually stricken by the court. So all of those references have no weight compared to the authoritative, clear I am a Mexican citizen statements at SER 123, 2ER 299, and SER 119. Those are all under oath statements. Unless the court has any further questions with respect to the birth certificate, I'll move on briefly to 609B, as I see I'm running low on time. With respect to 609B, I also want to start with the standard of review here. This argument is waived, and I think what's missing from defense counsel's brief is the fact that Ms. Bednarski actually conceded in this case that the government was entitled to get in the fact of conviction. And I think the court looks at 2ER 24. That's where Ms. Bednarski raises the issue of these prior conviction records. And she says, the government has marked, in terms of prior conviction records, records way beyond what they are entitled to actually get in, essentially 32 pages. That's Ms. Bednarski acknowledging and conceding that the government was entitled to get in the fact of his prior convictions to show his lack of veracity. And her concern, as evidenced here, was always with the admission of the certified conviction records documenting all of the facts of conviction, not with the admission of the conviction itself. So when the court addressed Ms. Bednarski's concern and said facts aren't coming in, just the facts of conviction is admissible, that's when Ms. Bednarski, does that satisfy the issues you wanted to raise with respect to the convictions? Yes. So government's position is that this argument is plainly waived. Even if this court were to find, though, that it's governed by plain error, there was no procedural error because the district court here did make specific findings of facts and circumstances. And that's located at 1ER 26 to 27 of the record, where the court said that the fact of the prior convictions were relevant to his veracity and the fact that he made a false statement. And that he was specifically trying to balance the two things, which in this context means the probative value and the prejudicial effect. And he said it may be a little too much mustard on the hot dog to allow what those convictions actually were. That's my favorite part of the transcript. I see I'm running low on time. Unless the court has any further questions, government would submit and ask that you affirm the conviction in this case. On the last point, Your Honor, mustard on the hot dog may be a great expression, but I don't think it rises to the level of specific facts and exceptional circumstances. Well, but there's a point to that. If defense counsel agreed that the fact of the convictions could be admitted, why isn't that a waiver of any argument against the admission? Because I don't think you can read the record in that way, Your Honor. If you go back at the record, she says that after – Forgive me. I want to make sure we're following this because I read it the same way. Which page of the transcript do you want us to be on, please? Excerpt 24, ER 24. Okay. She says, yes, Your Honor, that brings something up, and government has way too many records here that it's entitled to. Right before that, the district court notes that it's included in the instruction on impeachment by prior convictions in its proposed instructions. I think fairly read, that means that defense counsel simply recognized she lost on the issue of whether the convictions are coming in, and now she wants to limit the damage. Especially, in fact, in light of the fact that you have a – I don't think you should read with an affirmative withdrawal of an objection that the government agrees was made in the exhibit list. So I started – this transcript starts on page 24. I'm sorry. I'm talking about excerpt of record, page 24. Right. ER 24, the transcript page is 107. ER 24 lines – So I don't want to take a ton of time on this, but ER 24 is a transcript, and then the immediately preceding page, ER 23, is the reporter's transcript. It's the cover page. Right. And on ER 24, which is at the upper right-hand corner transcript page 107, lines 9 through 12, the court is saying there is a prior conviction instruction in the proposed jury instructions. So I think fairly read, that means defense counsel is realizing that her prior written objection in the exhibit list is being rejected, and now she's going to try to minimize the damage by sanitizing what records come in. I think there's a big difference, Your Honor, between finding a waiver where no objection was ever made and simply assuming that defense counsel would draw us an objection. I understand your point now. Okay. Thank you for clarifying it. I don't know why the record appears this way. I'm sorry. It's my excerpts, and I pulled the part that was on that issue. Okay. Anyway, I also wanted to – there was some talk about foreign birth certificates being just like American birth certificates. I think you can't simply assume that. For one thing, this is a Mexican birth certificate that's produced three months after the birth. So that's not like they do it in the United States. You know, we can't simply assume. Sometimes. Sometimes they are delayed. Sometimes birth certificates are delayed in the United States. The other thing that's different is in the United States, typically the birth's in a hospital and there's a doctor there witnessing it who has a duty to report. I don't think you can simply assume without some evidence in the record that Mexico has a duty to report on whoever happened to report this to the first level of government official. But once the government issues it, regardless of what the procedures are, once the government issues it, doesn't Pentado say that it's self-authenticating? We don't go behind the government issuance of a document. If the government of any country issues the document, why isn't that self-authenticating at that point? It may be self-authenticating, but authentication is a different question than hearsay. I think that's right. But when do we ever, to get to Judge Rollinson's point, when do we ever go there beyond what the government has accepted as proof of this birth or this death? Well, whether the government accepted it for their governmental record-keeping purposes is different than whether it's admissible under the rules of evidence. I'm asking a question and I haven't heard an answer. Is there a time when we have done that? A time when you've done what? Said the government accepted it for its record? Question why. I'm questioning whether that is adequate for the government to have accepted as official record for birth or death. Is there a case where we have gone beyond the government's issues of a document, of foreign countries, foreign governments' issues of a document to go behind that? Well, Pintado e Sordio, though that was partly because it was, you know, illegible in the copy. This is why I think we have to kind of tease this apart. It's not just an authentication question, right? You're raising this hearsay issue. And I can't think of a time when we've ever gone where you're asking us to go, which is to second-guess a government document about whether or not it is adequate to prove this fact. I don't remember the specific facts of Morales, which is the general case I quote about each level of hearsay having to have a duty to report. But I believe the record in Morales, unless it's just setting the general standard, is saying, well, there was a level of hearsay in that document that didn't satisfy the duty to report. So Morales may be an example. And I guess what I'm relying on is the plain language of the rule and the general rule set forth in Morales. So would you give me the language in Morales that you're relying on to say we can go behind the government issuance of a document to examine hearsay? The language? Well, it would be the language I quote in my brief. Well, I want to go to the precise language in the case because this is important. Well, the language that I have at the tip of my tongue, Your Honor, is the language I quote in my brief. Let me go to that in real quick. I'm not seeing this as being. It's statements by third parties. What page are you on? Page 32. Of U.S. v. Morales? Yes. The citation is 720F1194? Yeah, at page. I'm sorry, I left out the page state there. But it's statements by third parties who are not governmental. It doesn't help me for you to read it if I can't track it in the case, so I'll find it myself. I don't think it's in the context, though, of examining a government document for hearsay purposes. It's talking about the public records exception, I believe. Beyond that, I don't know. There's also the Mueller and Kirkpatrick Treatise, which I cite. I thought it was talking about the confrontation clause and whether or not it's something that's testimonial or not. I could dig it out of my file. Okay, that's okay. That's all right. I'm sorry, Your Honor. I think that's the best I can give you right now. It's a specific set of regulations that pertain to immigration cases, foreign records in immigration cases, and I think it is uncontested that those don't apply here. I don't think either party has raised them here. Is that correct? Yeah, the government hasn't made an argument about that, and I haven't gone to look for that, Your Honor. Correct. And that would be, of course, the rules of evidence I don't think apply in immigration. Right, hearsay is allowed to establish. It's really clear that neither of you are invoking those specific rules. Correct. I think what governs in this trial would be the federal rules of evidence.  Thank you. Federal rules of evidence for this issue on the public records, which hearsay exception does it come in under, if any? Okay. All right, counsel, we've taken you way past your time, so could you wrap up, please? Okay. I just had a note. I think there was a sufficient – I think the hearsay objection on the foreign birth certificate was sufficient. Certainly, the district court recognized there was a hearsay objection because it ruled on the question of hearsay. Plus, what's the defense attorney supposed to do after the district court says there's a hearsay exception applies? I mean, the district court had already addressed the issue. We understand. I think I'll submit I think there was also sufficient preservation of the juror dismissal. She expressed three different types of discomfort with the dismissal, and I think that's enough. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE